**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ORTRONIX, INC., Respondent.**

No. 24204.

United States Court of Appeals
Fifth Circuit.

July 11, 1967.

Rehearing and Rehearing En Banc
Denied Oct. 12, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Eugene B. Granof, Atty., N.L.R.B., Washington, D. C. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Lawrence M. Joseph, Atty., N.L.R.B., for petitioner.

Norman F. Burke, Orlando, Fla., van den Berg, Gay & Burke, Orlando, Fla., for respondent.

Before GEWIN and AINSWORTH, Circuit Judges, and LYNNE, District Judge.

AINSWORTH, Circuit Judge:

Petitioner, N.L.R.B., seeks enforcement of its order of December 13, 1965 directed to respondent, Ortronix, by which it found that respondent violated Sections 8(a) (5) and (1) of the National Labor Relations Act (29 U.S.C. § 151 et seq.) by refusing to bargain with the Union (Sheet Metal Workers' International Association, AFL-CIO), which was certified by the Board following a representation election. The unfair

labor practice charge was made by the Board without a hearing on the merits, the trial examiner having granted the General Counsel's motion for judgment on the pleadings, which was affirmed by the Board (156 N.L.R.B. No. 1). We hold that the action of the Board is arbitrary and unreasonable because under the circumstances of the case there were material disputed facts which required a hearing on the merits as provided for by Sections 10(b) and 10(c) of the Act (29 U.S.C. § 160).[1]

On September 20, 1963, the Union filed its petition seeking to represent the company's production and maintenance employees. The Regional Director held a hearing after which he directed an election be held. The company's request for a review of that decision was denied. On March 31, 1964, the election was held which the company won by a vote of 166–84. The Union filed objections to the election because of alleged unfair labor practices having occurred at the Orlando, Florida, plant. An ex parte administrative investigation was conducted by the Regional Director[2] who sustained the Union's objections and directed the holding of a new election. The company requested the Board to review the Re-

[1]. The applicable provisions in pertinent part read as follows: (29 U.S.C. § 160) "(b) Whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: * * * The person so complained of shall have the right to file an answer to the original or amended complaint and to appear in person or otherwise and give testimony at the place and time fixed in the complaint. In the discretion of the member, agent, or agency conducting the hearing or the Board, any other person may be allowed to intervene in the said proceeding and to present testimony. Any such proceeding shall, so far as practicable, be conducted in accordance with the rules of evidence applicable in the district courts of the United States under the rules of civil procedure for the district courts of the United States, adopted by the Supreme Court of the United States pursuant to section 2072 of Title 28.
(29 U.S.C. § 160) "(c) The testimony taken by such member, agent, or agency or the Board shall be reduced to writing and filed with the Board. Thereafter, in its discretion, the Board upon notice may take further testimony or hear argument. If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engag-

ing in any such unfair labor practice, then the Board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: * * * If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint. No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, or the payment to him of any back pay, if such individual was suspended or discharged for cause. In case the evidence is presented before a member of the Board, or before an examiner or examiners thereof, such member, or such examiner or examiners as the case may be, shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with the Board, and if no exceptions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may authorize, such recommended order shall become the order of the Board and become effective as therein prescribed."

[2]. Such an administrative investigation is provided for in Section 102.69(c) of the Board's Rules & Regulations (29 C.F.R. 102.69(c)).

gional Director's rulings maintaining the Union's objections to the election and calling a new election; it also requested a hearing, all of which was denied by the Board.

On January 21, 1965, a second election was held and this time the Union prevailed by a vote of 75–59. The company then filed objections to the second election. The Regional Director conducted another ex parte administrative investigation and determined that none of the objections of the company warranted setting aside the election. The company requested that the Board review the Regional Director's decision, which was denied. Thereafter the Regional Director certified the Union as the bargaining representative but the company declined to bargain. The unfair labor practice charge was then filed by the Union with the Regional Director for refusal of the company to bargain and a complaint was issued which the company answered admitting its refusal to bargain but giving as its reason for refusal the improper certification of the Union because of alleged errors in the representation proceedings.

The General Counsel for the Board filed a motion for summary judgment on the ground that the company's answer raised only issues heretofore decided in the representation cases. The company moved to dismiss the motion for summary judgment. Both motions were referred to a trial examiner who denied the company's motion and directed that within ten days it submit evidence, either newly discovered or unavailable at the time of the representation proceedings, which the company would offer for the record in any hearing held under the unfair labor practice complaint. The company failed to submit evidence, and on September 14, 1965, the trial examiner found "that the statutory violation alleged in the complaint is established by pleadings and that no litigable issue remains requiring a hearing for the purpose of taking evidence. Accordingly, the General Counsel's motion for judgment on the pleadings is hereby granted." Thereafter the Board adopted the trial examiner's findings, conclusions and recommendations as its own.

Respondent company claims that the summary judgment procedure was unauthorized either under the National Labor Relations Act or the Administrative Procedure Act (5 U.S.C. §§ 1001 et seq.). The company contends that it has never had an opportunity to present, either to the Board or one of its trial examiners, in a formal proceeding, the facts on which it relies to sustain its objections to the second election in which the Union prevailed nor has it been confronted in such a formal proceeding with the evidence on which the Regional Director relied to set aside the first election which the company had won.

■ Representation proceedings do not come before us by direct review, but where an unfair labor practice is charged for refusal to bargain, and the employer has refused to recognize the certification, the election proceedings are then before the court for review and the representation cases and the unfair labor practice case become as one and the complete record is fully reviewable. United States Rubber Company v. N.L.R.B., 5 Cir., 1967, 373 F.2d 602, 603 (see footnote 3 and cases there cited).

Thus we look to what happened in the representation proceedings (conducted without formal hearing) to determine if there was material conflicting evidence. When the Regional Director maintained some of the Union's objections and set aside the first election he

---

3. In Neuhoff Brothers, Packers, Inc. v. N.L.R.B., 5 Cir. 1966, 362 F.2d 611, we reviewed a case in which summary judgment had been granted against the company on a union complaint that the company refused to bargain, and said, " * * * we must assume that for the Board to prevail, any factual issues that may have properly been raised before the Board, are to be viewed most strongly from the standpoint of the company * * *." The Board's order was enforced.

did so on the basis of findings that the company's personnel manager (McGraw) and its president (Kilbey) had made pre-election speeches to the company's employees—a captive audience—promising to pave the parking lots, to furnish picnic tables upon which the employees could eat lunch and to provide company picnics. The company president had predicted "a lot of grief" in the event of a Union victory which "could have a radical effect on the company and cause all sorts of undesirable results," etc. The personnel manager's speech stated that the Union "cannot guarantee you anything in the way of new and additional benefits, they can't even guarantee you that you will keep all of the benefits you now have"; that if the company refused the Union's demands, the Union "will probably call a strike, and there goes jobs and business down the drain," and other expressions of similar nature. The Regional Director found that such conduct interfered with the employees' expression of a free choice in the election. The Regional Director also found that the company had coercively threatened and interrogated employees, engaged in acts of surveillance, attempted to create the impression of surveillance of Union activity, and discriminatorily discharged and laid off numerous employees. The election was set aside. The company contends that the Union should have been required to state its grounds for objection with greater specificity; that the objections were vague and indefinite so that the employer did not know how to meet them nor was it adequately apprised of the issues of fact created. The company also objected to failure of the Regional Director to disclose information which he had obtained in the course of his investigation and which was not made known until the Regional Director made his decision. The company contends, therefore, that it did not know what evidence it had to meet in a proceeding conducted in this manner without formal hearing, and that it should have been given the opportunity to fully explore the facts and allegations against it, after notice and hearing, with an opportunity to cross-examine any and all witnesses.

The company's principal objection to the second election which the Union won was directed to alleged misrepresentations in handbills distributed by the Union three days before the election which stated that most employees of the company who were laid off the previous summer "were forced to start again at the 'new employee' hiring rate." It contends that this unfair practice violated our holding in N.L.R.B. v. Houston Chronicle Publishing Company, 5 Cir., 1962, 300 F.2d 273, where in a similar case we set aside an election for false representations by the Union, which were made immediately before the election. The company also alleged that the Union made coercive promises and threats to the employees. The Regional Director held that the misrepresentations were timely known to the company before the election and nothing was done to refute them; that, therefore, there was no justification for setting aside the election. The Board denied the company's request for review of the Director's ruling, stating that "It raises no substantial issues warranting review."

In our view there exist numerous substantial and material issues of fact—there is head-on clash between the company and Union allegations of irregularity in the two elections—which call for a formal hearing and the failure of the Board to provide one was a denial of procedural due process. See United States Rubber Company v. N.L.R.B., 5 Cir., 1967, 373 F.2d 602. The employer here seeks to overturn the result of an election and the burden is on it to show that the election was unfairly conducted. A hearing is, therefore, necessary and indispensable if a proper and fair resolution of all the disputed facts contained in the charges and counter-allegations of the company and the Union, taken with the facts which the Regional Director considered as a result of his investigations, is to be made by the Board. Until this is done, under the circumstances

here, the employer will not have been given an opportunity to carry the burden of proving its case. On review of the Board's findings, we have discretion to require that the Board not shut off a party's right to produce evidence or conduct cross-examination material to the issues, as well as to see that a party's rights are not finally foreclosed until his case has been fairly heard. National L. R. Board v. Indiana & Michigan Elec. Co., 318 U.S. 9, 28, 63 S.Ct. 394, 405, 87 L.Ed. 579 (1943). Since substantial and material factual issues exist, they can be resolved only after a formal hearing. See Home Town Foods, Inc. v. N. L.R.B., 5 Cir., 1967, 379 F.2d 241; National Labor Relations Bd. v. Dallas City Packing Co., 5 Cir., 1956, 230 F.2d 708; National Labor Rel. Bd. v. West Texas Utilities Co., 5 Cir., 1954, 214 F.2d 732; National Labor Relations Board v. Sidran, 5 Cir., 1950, 181 F.2d 671; N.L.R.B. v. Capital Bakers, Inc., 3 Cir., 1965, 351 F.2d 45.

Enforcement of the Board's order is denied and the case is remanded for a full hearing as to the validity of the elections and certification.