**SOUTHWESTERN PORTLAND CEMENT COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 25791.

United States Court of Appeals Fifth Circuit.

Feb. 10, 1969.

Rehearing Denied April 7, 1969.

W. A. Thurmond, J. F. Hulse, Scott, Hulse, Marshall & Feuille, El Paso, Tex., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Vivian Asplund, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate General Counsel, William Wachter, Attorney, N. L. R. B., Washington, D. C., for respondent.

Before GOLDBERG and MORGAN, Circuit Judges, and LIEB, District Judge.

MORGAN, Circuit Judge:

This case is before this court upon the petition of Southwestern Portland Cement Company, hereinafter referred to as the Company, to review and set aside an order of the National Labor Relations Board, hereinafter referred to as the Board. It is another of those increasingly frequent cases in which an employer has objections to the conduct of a representation election and, in order to obtain judicial review of his contention, refuses to bargain with a certified union thus violating Section 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (5), and (1) and causing a Board order directing bargaining upon request to be issued.

The objections of the Company to the election in this case are directed to certain alleged misrepresentations in a telegram issued by the Union and posted by it on the Company's plant bulletin board on the day of the election and to the procedure used by the Board in determining the findings and conclusions which it reached. We believe that the Company's objections are not valid and hereby enforce the Board's order.

On August 23, 1966, the Union filed a petition with the Board for a representation election. The Company and the Union stipulated to, and the Board's Regional Director approved, an election to be held pursuant to the Board's regulations. On February 9, 1967, the Board conducted the election here disputed, and the Union won that election by a vote of

25 to 20 with no ballots being challenged.

Subsequently, the Company filed timely Objections to Conduct Affecting the Result of the Election. After receiving notice from the Regional Director to present relevant evidence, the Company submitted affidavits in support of its objections, and the Union submitted the affidavit of Lyle W. Johnson, the union organizer at the Odessa, Texas, plant of the Company.

As we have said before, the Company specifically objected to a certain telegram which stated:

"Rumor Ten Dollars Dues Local 49 Completely False. Dues Five Dollars Fifty Cents for Six Years. Rash Of Arbitration Cases Caused By Company Mangling Working Agreement Reduced Our Treasury. Members Voted Five Dollar Assessment For Three Years To Recoup. Of Ten Arbitration Cases, Nine Awarded Union. Membership Solidly Supporting Union And Current Bargaining Program."

The Regional Director issued a Report on Objections, recommending that the Company's Objections to Conduct Affecting the Result of the Election be overruled, and concluding, based upon findings of fact in his Report, that the Contents of the telegram in question are not material misrepresentations of fact. The Report finds that because of processing arbitration cases, the Union treasury had been depeleted; and the other local had voted a $5.00 assessment for three months.

The Regional Director then transmitted his Report on Objections to the Board. Along with this report were sent the Company's exceptions to the Report. In support of these exceptions the Company submitted certain documents which were also sent to the Board. However, the Regional Director did not forward to the Board the Company's affidavits and exhibits in support of its Objections to Conduct Affecting the Result of the Election.

On June 20, 1967, the Board found that the Company's exceptions raised no material or substantial issues of fact or law which would warrant reversing the Regional Director's findings and recommendations. Accordingly, it adopted them and certified the Union.

On August 10, 1967, the General Counsel issued a complaint alleging that the Company had violated Section 8(a) (5) and (1) of the act by refusing to bargain with the Union on request. In its answer, the Company admitted most of the allegations in the complaint, but challenged the validity of the certification, complaining that it was improperly denied a hearing on its objections.

On October 30, 1967, the Trial Examiner found that the Company had not shown that there was any newly discovered evidence with regard to its objections and that it had presented no factual issue which warranted a hearing. Accordingly, he granted the motion for summary judgment and found that the Company had violated Section 8(a) (5) and (1) of the act. Thereafter, the Company filed objections, along with a motion to reconsider the determination in the representation proceeding.

On January 11, 1968, the Board, affirming the Trial Examiner, found that the Company had violated Section 8(a) (5) and (1). Since, as the Board observed, the Company's position in the representation case had been previously considered by the Board, and the Board found that there were no material or substantial issues of fact or law which would warrant reversal of the Regional Director's findings, the Board denied the Company's motion to reconsider the determinations made in the representation case. The Board's order requires the Company to cease and desist from the unfair labor practices found, and it directs the Company to bargain upon request and to post appropriate notices. The order is reported in 169 NLRB No. 39.

Four issues are presented on this appeal, each of which will be discussed fully by the court.

The first issue is whether or not the Board should have set aside the repre-

sentation election because of the assertions in the telegram. We believe that the Board was correct in not setting aside the election.

■ It must be kept in mind that the burden is on the party objecting to the conduct of the representation election to prove that there has been prejudice to the fairness of the election. NLRB v. Mattison Machine Works, 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455 (1961); Home Town Foods, Inc. v. NLRB, 379 F.2d 241 (5 Cir., 1967). The burden thus assumed is a heavy one. Shoreline Enterprises of America, Inc. v. NLRB, 262 F.2d 933, 942 (5 Cir., 1959). In discharging this burden the Company must show that such false statements as may have been made *in fact* constituted an interference with a free choice of bargaining representatives; it is obvious that every false statement does not. Anchor Manufacturing Company v. NLRB, 300 F.2d 301, 303 (5 Cir., 1962); NLRB v. Trinity Steel Company, 214 F.2d 120, 123 (5 Cir., 1954).

■ In the exercise of its discretion in matters relating to election propaganda, the Board does not undertake to police or censor propaganda used in the elections it conducts, but rather leaves to the good sense of the voters the appraisal of such matters, and to the opposing parties the task of correcting inaccurate and untruthful statements. Linn v. United Plant Guard Workers, 383 U.S. 53, 60, 86 S.Ct. 657, 15 L.Ed.2d 582, 588 (1966). The Board exercises caution in setting aside elections because of inaccurate campaign propaganda and will set aside an election only where a material fact has been misrepresented in the representation campaign; opportunity for reply has been lacking; and the misrepresentation has had an impact on the free choice of the employees participating in the election. Linn v. United Plant Guard Workers, supra.

■ We think that the Company has failed to sustain its burden of establishing the requisite unfairness in the conduct of the election and that the

findings of the Board that the election was fairly conducted is supported by substantial evidence on the record taken as a whole. The telegram in question, in essence, merely outlined the events and presented the Union's side of the story, namely, that while the union employees at the other plant were paying $10.50 per month, a clear distinction should be drawn between regular dues assessed on an indefinite basis and a special three-month assessment which accounted for $5.00 of the current payments at the other plant. At most, the Union was engaging in that sort of campaign propaganda which could reasonably be evaluated by the employees and which, therefore, was not sufficient to prevent the exercise of the employees' free choice. Anchor Manufacturing Co. v. NLRB, supra, 300 F.2d at 303. The Company did not show that the Union's assertions *in fact* constituted an interference with a free choice of bargaining representative, and the Board was justified in overruling the Company's objections to the election.

■ The second issue is whether or not the affidavits in support of the Company's objections should have been forwarded to the Board as part of the record in this case. We believe that the Regional Director should have sent these affidavits to the Board, but the failure to do so did not constitute so gross an error as to warrant setting the election aside.

Section 102.68 of the Board's Rules and Regulations provides:

> "The Record in the proceeding shall consist of: The petition, notice of hearing, with affidavit of service thereof, motions, rulings, orders, the stenographic report of the hearing and of any oral arguments before the regional director, stipulations, exhibits, documentary evidence, affidavits of service, depositions, and any briefs or other documents submitted by the parties to the regional director".

The affidavits in question are certainly "other documents submitted by the parties to the Regional Director".

In determining what constitutes the record before the Board, the Third Circuit has held that in both representation and complaint proceedings before the National Labor Relations Board, all pleadings, rulings, documents, etc., constitute the record before the Board. NLRB v. Botany Worsted Mills, 133 F. 2d 876 (3 Cir., 1943).

The Court believes, however, that the Board's not having the affidavits before it was not harmful error in the case at hand as the Company's exceptions before the Board incorporated the contents of the affidavits and the contents of the telegram. We do not see how there is anything of relevance asserted in the affidavits that was not alleged in the Company's exceptions to the Report on Objections. Therefore, the election should not be set aside because the affidavits in the case at hand were not before the Board.

The third issue is whether or not the Company was entitled to a hearing in the representation case. We hold that the Company was not entitled to such a hearing.

■■■■ There is no requirement, constitutional or otherwise, that there be a hearing in the absence of substantial and material issues crucial to the determination of whether NLRB election results are to be accepted for purposes of certification. NLRB v. Bata Shoe Company, 377 F.2d 821 (4 Cir., 1967); See also NLRB v. Air Control Products of St. Petersburg, Inc., 335 F.2d 245, 249 (5 Cir., 1964); NLRB v. O. K. Van Storage, Inc., 297 F.2d 74, 76 (5 Cir., 1961). In order to be entitled to a hearing, the objecting party must supply the Board with specific evidence which prima facie would warrant setting aside the election. NLRB v. O. K. Van Storage, Inc., supra. United States Rubber Company v. NLRB, 373 F.2d 602, 606 (5 Cir., 1967).

■■■ In the representation proceeding, the Company was afforded full opportunity to submit to the Regional Director evidence in support of its objections to the election. Such evidence was submitted and considered by the Regional Director, and following the Regional Director's Report on Objections, the Company filed exceptions and supporting evidence which were considered by the Board. To this extent, the Company was heard in that it was accorded the right to present evidence, given notice of all adverse findings, and an opportunity to rebut those findings.

A good summary of the law on this point was given by Judge Hutcheson in NLRB v. O. K. Van Storage, Inc., supra, 297 F.2d at p. 76:

"Nowhere in the Act is there a specific requirement that the Board conduct post-election hearings on objections to the conduct of elections; rather, it is implicit in the Act that questions preliminary to the establishment of the bargaining relationship be expeditiously resolved, with litigious questions reserved for the proceedings for review or enforcement of Board orders. The Board nonetheless makes it a practice to hold post-election hearings on objections to elections, but in keeping with the spirit of the Act does so only when it appears that the allegations relied on to overturn the election have a basis in law and that there is evidence to support them. The opportunity for protracted delay in certification of the results of representation elections which would exist in the absence of reasonable conditions to the allowance of a hearing on objections is apparent. An objecting party who fails to satisfy such conditions has no cause for complaint when and if his demand for a hearing is denied".

Accordingly, this court holds that the Company was not entitled to a hearing in the representation case.

The last issue is whether or not the Board should have admitted evidence relating to the representation proceeding in the unfair labor practice proceeding. We hold that the Board was correct in not admitting such evidence.

Where, as here, the employer refuses to recognize the certified union, the representation and unfair labor practice proceedings are really one, and a single trial of the representation issue is enough. Pittsburgh Plate Glass Co. v. NLRB, 313 U.S. 146, 158, 61 S.Ct. 908, 85 L.Ed. 1251, 1261 (1940). The law seems well established that it is not error for the Board in an unfair labor practice proceeding of the sort here involved to exclude evidence relating to the unit determination if that evidence is not newly discovered or was not otherwise available at the representation hearing. NLRB v. Douglas County Electric Membership Corp., 358 F.2d 125 (5 Cir., 1966); NLRB v. Air Control Products of St. Petersburg, Inc., supra. The Company has made no such demonstration. Therefore, the court holds that the Board did not err in refusing to admit the evidence in question.

Order enforced.